IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

ANN Y. HAMPTON, )
)
    Plaintiff, )
)
v. ) No. _____
)
WILLIAM B. BRYANT and )
JENNIFER BRYANT, )
)
    Defendants. )
)

## COMPLAINT

Plaintiff Ann Y. Hampton ("Ms. Hampton") hereby files this Complaint and alleges as follows:

### I. INTRODUCTION

This case concerns the failed construction of a self-storage facility in Clarksville, Tennessee and the wrongful diversion of funds that were to pay for said construction. In connection with the construction project, William B. Bryant ("Mr. Bryant") and his wife, Jennifer Bryant ("Ms. Bryant") (together as the "Defendants"), engaged in a scheme against Ms. Hampton, Mr. Bryant's great aunt, in order to obtain funds from her for their personal use and benefit, including, upon information and belief, the construction of a new home and other projects unrelated to the storage facility. As a result of Defendants' wrongful conduct, Ms. Hampton has suffered significant damages, including the loss of her investment and lost profits from the storage facility.

### II. PARTIES

1. Ms. Hampton is an individual and citizen of North Carolina, residing at 5018 Fairlawn Crescent Court, Charlotte, North Carolina 28226.

2. William B. Bryant is an individual and citizen of Tennessee, residing at 1109 Drakes Cove Road North, Adams, Tennessee 37010.

3. Jennifer Bryant is an individual and citizen of Tennessee, residing at 1109 Drakes Cove Road North, Adams, Tennessee 37010.

### III. JURISDICTION AND VENUE

4. The Court has jurisdiction over Ms. Hampton's claims under 28 U.S.C. § 1332(a).

5. Venue is proper because Defendants both reside in this District, a substantial part of the actions and omissions of which Ms. Hampton complains occurred in this District, and the property that is the subject of the action is situated in this District. 28 U.S.C. § 1391(a).

### IV. FACTS

6. Mr. Bryant is the great nephew of Ms. Hampton's former husband.

7. Ms. Bryant is the wife of Mr. Bryant.

8. In or around July 2005, Mr. Bryant approached Ms. Hampton with a business proposal for the development of a storage facility.

9. Pursuant to the business proposal, Ms. Hampton would purchase a piece of real property located at 1683 Ft. Campbell Boulevard in Clarksville, Tennessee (the "Property") where the storage facility would be constructed.

10. Pursuant to the business proposal, the storage facility was to be known as "A+ Storage."

11. Pursuant to the business proposal, Ms. Hampton would furnish all of the capital for the development and expenses of the storage facility.

12. Pursuant to the business proposal, Mr. Bryant would be responsible for hiring contractors, sub-contractors, and other labor for the construction of the storage facility.

13. Pursuant to the business proposal, Mr. Bryant would be responsible for purchasing all materials needed for the construction of the storage facility using the funds provided by Ms. Hampton.

14. Pursuant to the business proposal, Mr. Bryant would report to Ms. Hampton, who lived in North Carolina, about the expenses and progress of the project.

15. Pursuant to the business proposal, Mr. Bryant and Ms. Bryant would then operate the storage facility once it was fully developed.

16. Pursuant to the business proposal, Mr. Bryant stated that the storage units would be fully developed and ready for business within six months following the acquisition of the real property by Ms. Hampton.

17. Mr. Bryant prepared a document titled "Estimated Timeline for Construction and Expenses" (the "Timeline").

18. Mr. Bryant provided a copy of the Timeline to Ms. Hampton in an attempt to convince her to move forward with the proposal. A copy of the Timeline and Mr. Bryant's letter enclosing the Timeline are attached as **Exhibit A**.

19. Based upon Mr. Bryant's representations, Ms. Hampton agreed to Mr. Bryant's business proposal regarding the storage facility.

20. Ms. Hampton closed on the purchase of the Property on September 13, 2005.

21. Thereafter, Ms. Hampton began providing capital for the construction of the storage facility.

22. The capital was deposited into a bank account located at Legends Bank held in the name of A+ Storage (the "Bank Account").

23. Defendants both had access to the Bank Account and would routinely write checks from that account for expenses and costs purportedly related to the construction of the storage facility.

24. On November 27, 2006, Ms. Hampton and Mr. Bryant entered into an agreement memorializing the terms and conditions of the business proposal and creating a limited liability company titled Operating Agreement of Bryant-Hampton Investments, LLC (the "Bryant-Hampton Investments Agreement"). A true and exact copy of the Bryant-Hampton Investments Agreement is attached as **Exhibit B**.

25. The business purpose of Bryant-Hampton Investments, LLC ("Bryant-Hampton Investments") was to acquire the Property and to construct, own, lease, and maintain the storage facility on the Property. *See* Section 2.3 of Exhibit B.

26. Ms. Hampton and Mr. Bryant were both members of Bryant-Hampton Investments. *See* Introductory Paragraph of Exhibit B.

27. Ms. Hampton was the manager and sole owner of Bryant-Hampton Investments. *See* Introductory Paragraph and Sections 3.2 and 4.2 of Exhibit B.

28. Mr. Bryant was responsible for maintaining "true and full financial records and books of account" for Bryant-Hampton Investments. *See* Section 9.1 of Exhibit B.

29. Mr. Bryant was also responsible for providing Ms. Hampton with an accounting of the company's revenues and expenses on a monthly basis. *See* Section 9.4 of Exhibit B.

30. Under the Bryant-Hampton Investments Agreement, Mr. Bryant would receive a forty-nine percent (49%) interest in Bryant-Hampton Investments in return for constructing and operating the storage facility once (1) all third-party debt of the company was repaid in full; and,

(2) Ms. Hampton received repayment in full of all loans advanced to the company. *See* Sections 3.1 and 3.2 of Exhibit B.

31. At the time the parties entered into the Bryant-Hampton Investments Agreement, Ms. Hampton had already provided capital for the construction of the storage facility totaling $462,915.60.

32. The $462,915.60 provided by Ms. Hampton was treated as prior advances to the company under a Promissory Note entered into between Bryant-Hampton Investments and Ms. Hampton totaling $500,000 on November 27, 2006. A true and exact copy of the Promissory Note is attached as **Exhibit C**.

33. On November 27, 2006, Ms. Hampton entered into an agreement with Ms. Bryant titled the "Operating Agreement of H & B Investments, LLC," a true and exact copy of which is attached as **Exhibit D**.

34. Ms. Hampton and Ms. Bryant were both members of H & B Investments, LLC ("H & B Investments"). *See* Introductory Paragraph of Exhibit D.

35. The business purpose of H & B Investments was to enter into a lease with Bryant-Hampton Investments for the storage facility and to operate and maintain it. *See* Section 2.3 of Exhibit D.

36. Ms. Hampton held fifty-one percent (51%) interest in H & B Investments, and Ms. Bryant held the remaining forty-nine percent (49%) interest. *See* Section 3.2 of Exhibit D.

37. Ms. Hampton served as the Manager of H & B Investments, and Ms. Bryant served as its day-to-day operator in charge of its books and accounting. See Introductory Paragraph and Sections 4.2 and 9 of Exhibit D.

38. Despite the business proposal and despite the contracts entered into between the parties, Mr. Bryant failed to complete construction of the storage facility, and Mr. and Ms. Bryant began a scheme whereby they withdrew funds from the Bank Account for their personal use, all the while misleading Ms. Hampton about the status of the construction project and the use of the funds.

39. From in or around 2006 through 2007, Defendants using funds from the Bank Account purchased materials from Winn Materials, Inc. in the amount of $12,355.78. Upon information and belief, those materials were used in the construction of Defendants' personal home at 3345 Chapel Hill Road, Montgomery County, Tennessee (the "Chapel Hill Home"). True and correct copies of Documents Relating to Winn Materials, Inc. are attached as **Exhibit E**.

40. On or around October 27, 2006, Mr. Bryant paid $398.00 from the Bank Account to Stone, Rudolph, and Henry, CPA for, upon information and belief, the preparation of his personal income tax return.

41. In or around January through March, 2006, Mr. Bryant using funds from the Bank Account purchased materials and services from 101st Ready Mix, LLC, C. Wallace Concrete, and Curtis Wallace in the amount of $20,647.67. Upon information and belief, these materials and services were for concrete work at Defendants' Chapel Hill Home. True and exact copies of Documents Relating to 101st Ready Mix, LLC, C. Wallace Concrete, and Curtis Wallace are attached as **Exhibit F**.

42. In or around May 2006, A+ Storage received a refund from Yardbird Fences & Decks totaling $483.50 due to an overpayment. Defendants failed to deposit the refund into the

Bank Account and instead kept the money for their personal use. A true and exact copy of the Invoice from Yardbird Fences & Decks is attached as **Exhibit G**.

43. In or around April 2006, Mr. Bryant using funds from the Bank Account purchased a patio door from Surplus Warehouse totaling $250.76. The storage facility does not have a patio door. Upon information and/or belief, that door was for either the Chapel Hill Home or another home that he was constructing. A true and exact copy of the Invoice from Surplus Warehouse is attached as **Exhibit H**.

44. On or around March 2006, Mr. Bryant using funds from the Bank Account purchased wooden studs, insulation, and electrical house wiring totaling $362.73 from Orgain Building Supply. Upon information and belief, the materials were for either the Chapel Hill Home or another home that he was constructing. A true and exact copy of the Invoices from Orgain Building Supply are attached as **Exhibit I**.

45. On or around November 24, 2006, Defendants using funds from the Bank Account purchased basketball tickets from and made a Governors Club donation to Austin Peay State University totaling $350.00. A true and exact copy of the Check written to Austin Peay from the Bank Account and a letter from a representative of Austin Peay regarding the purchase are attached as **Exhibit J**.

46. On or around March 28, 2006, Mr. Bryant using funds from the Bank Account purchased various items from Lowe's totaling $450.31. Upon information and belief, Mr. Bryant used these items for either the Chapel Hill home or for another home that he was constructing, and/or he retained them for his personal use. When questioned about the purchases, Mr. Bryant made false statements in an email to Ms. Hampton that the purchases were

437936.05  08506-001

7

Case 3:09-cv-01142   Document 1   Filed 12/03/09   Page 7 of 19 PageID #: 7

related to the construction project. True and exact copies of the Receipt from Lowe's and Mr. Bryant's March 2008 Email are attached as **Exhibit K**.

47. In or around March, April, May and November 2006, Mr. Bryant using funds from the Bank Account purchased various items from Rural King totaling $775.75. Upon information and belief, Mr. Bryant used these items for either the Chapel Hill home or for another home that he was constructing, and/or he retained them for his personal use.

48. On or around August 25, 2006, Mr. Bryant using funds from the Bank Account paid the utility bill in the amount of $67.08 for, upon information and belief, Defendants' Chapel Hill Home.

49. On or around January 10, 2006, Mr. Bryant using funds from the Bank Account paid $9,000 to Joshua Jones. Upon information and belief, this payment was for services rendered by Mr. Jones for Defendants' personal benefit and not for the benefit of the storage facility project. A true and exact copy of letters to Mr. Jones along with a cashier's check from A+ Storage to Mr. Jones totaling $9,000.00 are attached as collective **Exhibit L**.

50. In or around August 2006, Mr. Bryant, upon information and belief, represented to T&R&W Asphalt, Inc. ("T&R&W") that he was the owner of A+ Storage and requested that T&R&W pave his driveway at the Chapel Hill Home and add the cost to an invoice for other services that the company provided to A+ Storage. T&R&W refused to pave the driveway and bill it to A+ Storage after it discovered that Mr. Bryant had misrepresented that he owned A+ Storage. A true and exact copy of the Letter from T&R&W Asphalt, Inc. concerning Mr. Bryant's misrepresentations is attached at **Exhibit M**.

51. On or around October 6, 2005, Mr. Bryant using funds from the Bank Account purchased a filing cabinet for $306.59. Upon information and belief, Mr. Bryant retained the

filing cabinet for his personal use and benefit. A true and correct copy of the Filing Cabinet Receipt is attached as **Exhibit N**.

52. On or around October 13, 2005, Mr. Bryant using funds from the Bank Account purchased products from Dell totaling $478.52. Upon information and belief, Mr. Bryant used these products for his personal use and benefit. A true and correct copy of the Dell Receipt is attached as **Exhibit O**.

53. On or around April 25 and 30, 2006, Mr. Bryant using funds from the Bank Account paid insurance premiums totaling $1,021.00 for an insurance policy not benefiting A+ Storage.

54. During the construction project, Mr. Bryant wrote checks for cash and cashiers checks to himself, to his father, Mike Bryant, and to Mossback Properties, one of his businesses, and also made withdrawals from the Bank Account totaling approximately $88,175.79.

55. Upon information and belief, the $88,175.79 that Mr. Bryant withdrew was used for his own personal use and benefit and/or for purposes not benefiting A+ Storage, Bryant-Hampton Investments, and/or H & B Investments.

56. Upon information and belief, Defendants purchased various other office supplies from Office Depot and other businesses with funds from the Bank Account and/or Ms. Hampton's funds, but kept those supplies for their personal use and benefit.

57. Mr. Bryant failed to provide the monthly accounting reports to Ms. Hampton.

58. Although Mr. Bryant eventually provided some limited accounting information for A+ Storage to Ms. Hampton, neither Mr. Bryant nor Ms. Bryant ever disclosed that they had used funds from the Bank Account for their personal use and benefit.

59. Mr. Bryant failed to complete construction of the storage facility, abandoning it prior to its completion.

60. Ms. Hampton invested approximately $718,083.53 in the A+ Storage construction project.

61. Because Mr. Bryant never completed the construction of the storage facility, Ms. Hampton suffered lost profits from her investments in the A+ Storage construction project and ownership interests in Bryant-Hampton Investments and H & B Investments.

62. Ms. Hampton was further damaged by Defendants' withdrawals from the Bank Account and/or expenditures of Ms. Hampton's funds for their own personal use and benefit and/or for purposes not benefiting A+ Storage, Bryant-Hampton Investments, and/or H & B Investments.

## IV. CAUSES OF ACTION

### Count One:
### Breach of Contract – Contract to Construct the Storage Facility

63. Ms. Hampton repeats and incorporates each and every allegation contained in the preceding paragraphs as if set forth herein.

64. Ms. Hampton and Mr. Bryant entered into an oral agreement whereby Mr. Bryant was obligated to construct the A+ Storage facility.

65. Pursuant to the agreement, Mr. Bryant was obligated to use the capital provided by Ms. Hampton only for purposes related to the construction of the storage facility.

66. Pursuant to the agreement, Mr. Bryant was obligated to provide true and accurate financial and accounting reports to Ms. Hampton concerning the construction project.

67. Mr. Bryant failed to complete the construction of the A+ Storage facility, thus breaching his agreement with Ms. Hampton

68. Mr. Bryant also breached the agreement when he used portions of the capital provided by Ms. Hampton for the construction of the storage facility for his own use and benefit.

69. Mr. Bryant breached the agreement when he failed to provide true and accurate financial and accounting reports to Ms. Hampton concerning the construction project.

70. Mr. Bryant breached the implied covenant of good faith and fair dealing in the agreement when he made false statements to Ms. Hampton, abused his access to the capital, willfully failed to complete the construction project, and acted in bad faith with regard to his expenditures of the capital.

71. Ms. Hampton has been damaged by Mr. Bryant's material breaches of contract, including, but not limited to, lost profits relating to A+ Storage, the loss of and unnecessary expenditures of portions of her capital and investments, and increased completion costs of the project.

### Count Two:
### Breach of Contract –Bryant-Hampton Investments Agreement

72. Ms. Hampton repeats and incorporates each and every allegation contained in the preceding paragraphs as if set forth herein.

73. Pursuant to the Bryant-Hampton Investments Agreement, Mr. Bryant agreed to maintain true and full financial records and books related to Bryant-Hampton Investments, LLC.

74. Pursuant to the Bryant-Hampton Investments Agreement, Mr. Bryant agreed to provide monthly accounting reports to Ms. Hampton.

75. Implicit in the Bryant-Hampton Investments Agreement is the duty of all parties to act in good faith and fair dealing with respect to the company and the parties to the agreement.

76. Mr. Bryant breached the Bryant-Hampton Investments Agreement when he failed to maintain true and full financial records and books related to Bryant-Hampton Investments, LLC.

77. Mr. Bryant breached the Bryant-Hampton Investments Agreement when he failed to provide accounting reports to Ms. Hampton

78. Mr. Bryant breached the Bryant-Hampton Investments Agreement by failing to act in good faith and fair dealing.

79. As a result of Mr. Bryant's material breaches of contract, Ms. Hampton suffered damages including, but not limited to, lost profits relating to A+ Storage, Bryant-Hampton Investments, and/or H & B Investments and the loss of portions of her capital and investments in these companies.

### Count Three:
### Fraud – Expenditure of Funds

80. Ms. Hampton repeats and incorporates each and every allegation contained in the preceding paragraphs as if set forth herein.

81. Defendants committed fraud when they intentionally misrepresented that the funds listed above were withdrawn from the Bank Account and used to cover expenses related to the construction project.

82. Defendants committed fraud when they intentionally created a false impression that the funds listed were withdrawn from the Bank Account and used to cover expenses related to the construction project.

83. In actuality, these funds were expended for Defendants' personal use and benefit and/or for purposes not benefiting A+ Storage, Bryant-Hampton Investments, and/or H & B Investments.

84. For example, on March 13, 2008, Mr. Bryant emailed a list of expenditures to Ms. Hampton, which he represented to be related to the construction project. The list was provided after numerous requests by Ms. Hampton for an accounting of the funds for the construction project. Mr. Bryant's list was represented to be complete and accurate, yet it did not disclose the expenditures of the funds that Defendants made for their own use and benefit. Further, the list was incomplete and did not fully disclose all expenditures of the funds by Defendants. Copies of the Email from Mr. Bryant and List of Expenditures are attached as **Exhibit P**.

85. Defendants made these representations and created these misleading impressions with knowledge of their falsity and with the intent to defraud, mislead, and obtain an undue advantage over Ms. Hampton.

86. Ms. Hampton reasonably relied upon Defendants' representations to her injury that the capital that she deposited into the Bank Account would be and was being used to cover expenses related to the construction project.

87. As a result of Defendants' fraud, Ms. Hampton has lost portions of her capital and investments in A+ Storage, Bryant-Hampton Investments, and/or H & B Investments.

### Count Four:
### Fraud – Construction of the Storage Facility

88. Ms. Hampton repeats and incorporates each and every allegation contained in the preceding paragraphs as if set forth herein.

89. In or around April 2008, Mr. Bryant committed fraud when he intentionally misrepresented to Ms. Hampton or created a false impression that he was still in the process of constructing the storage facility.

90. Mr. Bryant knew that the construction of the storage facility had ceased and that he had abandoned the project at that time.

91. Mr. Bryant made these misrepresentations in order to mislead Ms. Hampton or to obtain an undue advantage over her so that he could continue to receive and/or have access to the capital that she invested in the construction project.

92. Ms. Hampton reasonably relied upon Mr. Bryant's misrepresentations to her detriment, believing that Mr. Bryant would have the experience and capability to construct the storage facility and that he at all times was continuing construction of the storage facility.

93. As a result of Mr. Bryant's fraud, Ms. Hampton has suffered damages including, but not limited to, lost profits relating to A+ Storage, Bryant-Hampton Investments, and/or H & B Investments and the loss of portions of her capital and investments in these companies.

## Count Five:
## Fraudulent Inducement

94. Ms. Hampton repeats and incorporates each and every allegation contained in the preceding paragraphs as if set forth herein.

95. Mr. Bryant made false representations to Ms. Hampton in order to induce her into accepting his business proposal and entering into a contract with him.

96. Mr. Bryant falsely represented to Ms. Hampton that the storage facility would be completely constructed within six months.

97. Upon information and belief, Mr. Bryant knew that he would not construct the storage facility within six months.

98. Mr. Bryant also falsely represented to Ms. Hampton that he would fully construct the storage facility.

99. Upon information and belief, Mr. Bryant knew that he would not complete the construction of the storage facility.

100. Mr. Bryant also falsely represented to Ms. Hampton that he would use all capital contributions made by her toward the costs and expenses associated with the construction of the storage facility.

101. Upon information and belief, Mr. Bryant knew that he would instead use the capital to fund the construction of his personal home and for other uses unrelated to the construction of the storage facility.

102. Mr. Bryant made these false statements in order to obtain funds from Ms. Hampton.

103. Ms. Hampton reasonably relied upon Mr. Bryant's statements and entered into the oral contract with him for the construction of the storage facility as well as the Bryant-Hampton Investments Agreement.

104. As a result of Mr. Bryant's fraudulent inducement, Ms. Hampton has suffered damages including, but not limited to, lost profits relating to A+ Storage, Bryant-Hampton Investments, and/or H & B Investments and the loss of portions of her capital and investments in these companies.

### Count Six:
### Conversion

105. Ms. Hampton repeats and incorporates each and every allegation contained in the preceding paragraphs as if set forth herein.

106. Defendants appropriated portions of the capital that Ms. Hampton provided for the construction of the A+ storage facility for their own use and benefit.

107. Upon information and belief, Defendants used the funds to construct the Chapel Hill Home and for other construction projects in which they were involved.

108. Upon information and belief, Defendants also appropriated materials, machinery, office supplies, and other items that were purchased with the capital that Ms. Hampton provided for the construction project.

109. Defendants are not the true owners of the capital and of the abovementioned items.

110. Defendants intentionally exercised dominion over the capital and these items in defiance of Ms. Hampton's rights and to her detriment.

### Count Seven:
### Negligence

111. Ms. Hampton repeats and incorporates each and every allegation contained in the preceding paragraphs as if set forth herein.

112. Mr. Bryant had a duty to oversee the construction of the storage facility and to ensure that the facility was constructed in a reasonable and workmanlike manner, on time and within budget.

113. Mr. Bryant failed to monitor the construction of the storage facility.

114. Mr. Bryant failed to ensure that the storage facility was constructed in a reasonable and workmanlike manner, on time and within budget.

115. As a result of Mr. Bryant's actions and inactions, some portions of the construction project had to be redone at a significant cost to Ms. Hampton.

116. Further, as a result of Mr. Bryant's actions and inactions, some materials were abandoned at the work site and ruined by the elements, requiring that they be repurchased at a significant cost to Ms. Hampton.

117. As a result of Mr. Bryant's negligence, Ms. Hampton has suffered damages in an amount to be proven at trial.

# Count Eight:
## Tennessee Consumer Protection Act

118. Ms. Hampton repeats and incorporates each and every allegation contained in the preceding paragraphs as if set forth herein.

119. Mr. Bryant engaged in unfair and deceptive acts and practices affecting the conduct of trade and commerce that were unlawful and in violation of the Tennessee Consumer Protection Act. Tenn. Code Ann. § 47-18-101 *et seq*.

120. Mr. Bryant falsely represented to Ms. Hampton that the storage facility would be completely constructed within six months.

121. Mr. Bryant also falsely represented to Ms. Hampton that he would fully construct the storage facility.

122. After the construction project began, Mr. Bryant represented that the construction project would require services, the purchase of materials, and the provision of capital that were unnecessary.

123. Mr. Bryant made these misrepresentations in order to obtain additional capital and to continue to have access to capital for his own use and benefit or for uses not related to A+ Storage, Bryant-Hampton Investments, or H & B Investments.

124. Additionally, Mr. Bryant misrepresented that he was continuing to provide services related to the construction of the storage facility after he had abandoned the project.

125. Mr. Bryant also misrepresented that the funds he withdrew from the Bank Account were being used for purposes relating only to the construction of the storage facility and not for uses and benefits unrelated to the construction project.

126. When questioned about his expenditures, Mr. Bryant falsely stated that the expenditures that were made by Defendants related to the construction project.

127. When questioned about specific receipts and the items purchased on those receipts, Mr. Bryant made false statements about the items that he had purchased, including false descriptions of those items.

128. Mr. Bryant's misrepresentations were willful.

129. Mr. Bryant's misrepresentations violate the Tennessee Consumer Protection Act, including, but not limited to, Tenn. Code Ann. § 47-18-104(b)(4), (5), (13), and (27).

130. As a result of Mr. Bryant's violations of the Tennessee Consumer Protection Act, Ms. Hampton has suffered damages in an amount to be proven at trial.

**PREMISES CONSIDERED, PLAINTIFF PRAYS:**

1. That process issue and be served upon Defendants, requiring them to appear and answer this Complaint within the time required by law;

2. That the Court award all damages to Plaintiff resulting from breaches of contract, fraud, fraudulent inducement to contract, conversion, negligence, and violations of the Tennessee Consumer Protection Act committed by Defendants in an amount to be determined at trial, but in no event less than $75,000.00;

3. That the Court order Defendants to provide a full and accurate accounting of all financial activity related to the Bank Account, A+ Storage, Bryant-Hampton Investments, and H & B Investments;

4. That the Court place a constructive trust on all property owned by Plaintiff that was wrongfully appropriated by Defendants;

5. That the Court trace property wrongfully disposed of, recover the property and its proceeds, and return it to Plaintiff;

6. That the Court provide all relief available under the Tennessee Consumer Protection Act, including but not limited to treble damages and attorney's fees under Tenn. Code Ann. § 47-18-109;

7. That punitive damages be imposed upon Defendants;

8. That the costs of this action be taxed against Defendants; and

9. That the Court grant such other relief, legal or equitable, which the Court deems appropriate.

Respectfully submitted,

*signature*

Samuel P. Funk (No. 19777)
Lisa K. Helton (No. 23684)
SHERRARD & ROE, PLC
424 Church Street, Suite 2000
Nashville, Tennessee 37219
(615) 742-4200
(615) 742-4539 (fax)

*Attorneys for Plaintiff, Ann Y. Hampton*